**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ANTHONY SIDES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23cv502 |
| | ) | |
| BOBBY KIMBROUGH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on the "Motion to Dismiss" filed by Forsyth County, Forsyth County Sheriff Bobby Kimbrough, Dan Ricardo Didomizio, Jr., Sean Edwards Mukrdechian, Kela Marie Spain, Joel Gregory Surratt, Damian Daniel McPherson, Kiam DeQuan Holley, and Patrick Michael Morrissey (collectively, the "Defendants") (Docket Entry 8)[1] (the "Dismissal Motion") and Defendants' "Motion to Seal" (Docket Entry 12) (the "Sealing Motion"). For the reasons that follow, the Court (i) should grant the Dismissal Motion and (ii) will deny the Sealing Motion.

**BACKGROUND**

Asserting a litany of state and federal claims regarding his intake at the Forsyth County Detention Center on May 23, 2020, Anthony Sides (the "Plaintiff"), through counsel, sued Defendants and "John Doe Corporation[,] . . . the Surety on the official bond

---

1 For legibility reasons, this Opinion omits all-cap and bold font and the word "the" in front of Plaintiff and Defendant(s) in all quotations from the parties' materials.

of Defendant Kimbrough as Sheriff of Forsyth County" (Docket Entry 5 (the "Complaint"), ¶ 7), in state court. (See generally Docket Entry 5.) Defendants removed the action to this Court based on "federal question jurisdiction" regarding Plaintiff's federal claims and "supplemental jurisdiction" for Plaintiff's state claims. (Docket Entry 1 at 1-2.)[2] According to the Complaint's "Facts" section (Docket Entry 5 at 6):

At all relevant times, Plaintiff resided in Forsyth County, North Carolina. (Id., ¶ 20.) "On May 23, 2020, between approximately the hours of 2:00 am and 4:00 am at the Forsyth County Detention Center, Plaintiff was injured by several officers that used excessive force." (Id., ¶ 21.) "The video of the encounter shows that Defendants used excessive force to remove Plaintiff's clothing and deposit Plaintiff into a cell." (Id., ¶ 22.) "Plaintiff was violently thrown against the cell walls and the floor by Defendants." (Id., ¶ 23.) "There is no evidence that Plaintiff struck or was combative with the officers. There is also no evidence that Plaintiff refused to comply with the officers' verbal commands." (Id., ¶ 24.) "The force used by the officers resulted in Plaintiff suffering a broken jaw requiring surgery, wrist pain, and permanent impairment of his vision." (Id., ¶ 25.) "The Forsyth County Detention Center failed to provide proper care

---

2 Docket Entry page citations utilize the CM/ECF footer's pagination.

and assessment for Plaintiff's injury.  Plaintiff was not assessed and treated in a timely fashion." (<u>Id.</u>, ¶ 26.)

"Defendants' use of excessive force has caused serious damage to Plaintiff such that he has a permanent physical deformity and incurred outstanding medical bills and expenses."  (<u>Id.</u>, ¶ 27.) "Defendants' actions have interfered with Plaintiff's income and have resulted in great financial damage to Plaintiff, for which he is entitled to damages from Defendants."  (<u>Id.</u>, ¶ 28.)  "As a direct and proximate result of Defendants' malicious, intentional, and willful actions, Plaintiff has suffered serious and permanent financial, physical, psychological, and emotional injury, for which he has received and is continuing to receive medical, psychological, and psychiatric attention, and as a result of which he has incurred medical and other expenses, lost wages and other financial losses."  (<u>Id.</u>, ¶ 29.)  "As a direct and proximate result of Defendants' malicious, intentional and willful actions, Plaintiff has suffered permanent physical, psychological and emotional injury."  (<u>Id.</u>, ¶ 30.)  "Also as a direct and proximate result of Defendants' malicious, intentional and willful actions, Plaintiff has suffered severe emotional distress, severe depression, panic disorders, post-traumatic stress disorder, and other pecuniary and non-pecuniary losses."  (<u>Id.</u>, ¶ 31.)  "All actions of Defendants were carried out in their capacities as sheriff, deputy sheriffs, law enforcement, or corrections officers

Case 1:23-cv-00502-UA-LPA   Document 21   Filed 01/09/24   Page 3 of 29

of and pursuant to policies and practices of Defendant Sheriff Bobby Kimbrough." (Id., ¶ 32.)

The Complaint contains twenty-two claims, including an intentional infliction of emotional distress claim, a gross negligence claim, a common-law battery claim, an "injury to prisoner by jailer" claim, and "negligence/gross negligence" claims against Forsyth Sheriff Deputies Didomizio, Mukrdechian, Spain, Surratt, McPherson, Holley, and Morrissey (each individually, a "Deputy Defendant," and collectively, at times, the "Deputy Defendants") and Sheriff Kimbrough. (See id. at 10-26, 31-33.) The Complaint further asserts claims for excessive force against each Deputy Defendant. (See id. at 27-31.)[3] Finally, the Complaint asserts claims against "Defendants" for "state created danger" (id. at 26), failure to train, and punitive damages. (See id. at 26-27, 33-34.)

As relevant to the Dismissal Motion, the "gross negligence" claim asserts:

> Plaintiff hereby incorporates the allegations contained in prior paragraphs of this Complaint, but [sic] reference thereto, as if herein fully set forth.
>
> Defendants, Forsyth County Sheriff Kimbrough, and the above-named Defendant Deputies owed a duty to Plaintiff and the general public to ensure that its agents, deputies, investigators and employees, performed

---

3 As the "Sixteenth Cause of Action" and "Eighteenth Cause of Action," the Complaint lodges identical excessive force claims against Deputy Surratt. (See id. at 29-30.)

their duties in a manner as to avoid excessive force upon Plaintiff by Officers.

Defendants breached these duties with regard to Plaintiff in several ways, including but not limited to, the following:

a. Forsyth County Sheriff Kimbrough failed to ensure that Deputies Dan Ricardo Didomizio, Jr., Sean Edward Mukrdechian, Kela Marie Spain, Joel Gregory Surratt, Damian Daniel McPherson, Kiam Dequan Holley, and Patrick Michael Morrissey were not [sic] adequately trained, supervised, and instructed;

b. Sheriff Kimbrough failed to ensure that the Forsyth County Sheriff's Office established reasonable and appropriate policies and procedures governing Officer and detainee/arrestee interactions;

c. Sheriff Kimbrough failed to ensure that the Forsyth County Sheriff's Office established reasonable and appropriate policies regarding the hiring, promotion, and retention of law enforcement personnel;

d. Defendants failed to maintain appropriate use of force with detainee/arrestee;

e. Defendants failed to comply with rules and regulations of the Forsyth County She[r]iff's Office and[;]

f. Defendants were careless and negligent in such other ways as may be identified during the course of discovery and/or trial.

Defendants' negligent acts and omissions are direct and proximate cause[s] of the severe and permanent injuries for which Plaintiff is entitled to recover damages under North Carolina law.

At all times relevant to the incident alleged herein, Deputies Dan Ricardo Didomizio, Jr., Sean Edward Mukrdechian, Kela Marie Spain, Joel Gregory Surratt, Damian Daniel McPherson, Kiam Dequan Holley, and Patrick Michael Morrissey committed the negligent acts and

5

omissions alleged while acting within the course and scope of their employment and/or agency with the Forsyth County Sheriff's Office. As such, Defendant Kimbrough is liable for the negligent acts and omissions of Defendant Deputies and their negligence is imputed to Sheriff Kimbrough through the doctrines of agency, vicarious liability, and *respondeat superior*.

Plaintiff is entitled to recover from Defendants, jointly and severally, an amount in excess of Twenty-five Thousand Dollars ($25,000.00) as a result of Defendants' negligence, gross negligence, and/or willful and wanton negligence.

(Id., ¶¶ 53-58 (certain internal paragraph numbering omitted).)

As for its "negligence/gross negligence" claims, the Complaint repeats the same allegations against each Deputy Defendant, altering only the name and pronoun associated with each claim (see id., ¶¶ 59-114):

The preceding paragraphs are hereby incorporated by reference and re-alleged as if fully set forth herein.

Defendant Deputy [Name], individually and in his[/her] official capacity as a Sheriff under the supervision of Forsyth County Sheriff Kimbrough, was negligent at the time and place alleged hereinabove, and his[/her] acts and omissions of negligence include, but are not limited to, the following:

a. He[/She] failed to possess the necessary training and experience to serve as a sheriff in the [sic] Forsyth County, and respond to an arrestee/detainee with reasonable force;

b. He[/She] failed to use reasonable force with Plaintiff when removing his clothes and depositing him in his cell;

c. He[/She] failed to contact appropriate medical personnel after Plaintiff sustained injuries caused by Defendants;

6

d. He[/She] failed to use less combative, provocative, and aggressive methods of communication with Plaintiff after his arrest; and

e. He[/She] was otherwise careless and negligent in such other ways as may be revealed by discovery or during the trial of this action.

Defendant's actions were malicious, intentional, unreasonable, willful and wanton, grossly negligent, and Defendant acted outside the scope of his[/her] duties as assigned by Forsyth County Sheriff Kimbrough and with conscious and reckless disregard for the lives and safety of others, including Plaintiff. Based on Defendant's conduct, Defendant is not entitled to immunity from personal liability and may be sued in his[/her] individual capacity.

The negligent acts and omissions of Defendant Deputy [Name], as described hereinabove, were a proximate cause of the injury to Plaintiff.

The acts and omissions of Defendant Deputy [Name], as described hereinabove, were willful, wanton and/or reckless, and amount to gross negligence.

Defendant Deputy [Name], was aware of the probable consequences of his[/her] conduct due to the use of excessive force against Plaintiff[,] which resulted in severe injuries.

The negligence of Defendant Deputy [Name], is imputed by law to the [sic] Forsyth County Sheriff Kimbrough by reason of Defendant Deputy [Name's] agency relationship with, and employment by, the Forsyth County Sheriff Kimbrough at the time and place that the incident occurred, under the doctrine of *respondeat superior*.

Plaintiff is entitled to recover from Defendants, jointly and severally, an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) as a result of Deputy [Name's] negligence, gross negligence, and/or willful and wanton negligence.

(Id., ¶¶ 59-66 (certain internal paragraph numbering omitted);

accord id., ¶¶ 67-114.)

7

The Complaint employs the same approach in its excessive force claims against Deputy Defendants:

> Plaintiff restates the allegations contained in each and every preceding paragraph as though fully set forth here.
>
> Defendant [Name] deprived Plaintiff of the rights, privileges and immunities secure[d] by the Constitution and laws of the United States by subjecting him to excessive force under the Fourth Amendment.
>
> Particularly, [Name] knew or should have known that the application of excessive force would cause the inflection [sic] of great pain.
>
> Defendant [Name's] use of force was also unreasonable under the circumstances.
>
> As a direct and proximate result of this use of excessive force, Plaintiff suffered serious personal injuries.

(Id., ¶¶ 131-35 (internal paragraph numbering omitted); accord id., ¶¶ 136-70.)

Finally, the Complaint presents the following failure to train claim:

> Plaintiff restates the allegations contained in each and every preceding paragraph as though fully set forth here.
>
> By their actions and inactions with respect to the training, supervision, and discipline of the officers removing Plaintiff's clothing and placing him in a cell, Defendants acted knowingly and with deliberate indifference to the rights of Plaintiff.
>
> Defendants, and each of them, individually and in their official capacity, are liable to Plaintiff, for damages both general and specific and for punitive damages under 4[2] U.S.C.[] § 1983.

(Id., ¶ 128-30 (internal paragraph numbering omitted).)

8

Defendants moved to dismiss the Complaint. (See Docket Entry 8.) In so doing, Defendants relied upon videos of the incident. (See, e.g., id. at 3 ("Most importantly, this case should be dismissed because the recordings of the incident, relied upon by Plaintiff in the [C]omplaint, show that Plaintiff's core allegation — that he was injured when thrown against the cell walls and floor — simply did not occur."); see also Docket Entry 13 (noting videos' manual filing).) "Defendants [also] moved to seal the [video] recordings out of an abundance of caution." (Docket Entry 12 at 7; see generally Docket Entry 12.) Plaintiff opposed both motions (see Docket Entries 15-16), relying, in part, on the submitted videos (see, e.g., Docket Entry 16 (the "Response") at 2 (describing what "[t]he videos show" and what "[t]he videos do not show"), 7 ("The video produced by the defendants makes clear that the detention officers are specifically trained to engage in excessive force and record their violations.")). As relevant to the Complaint, the videos show:

Between 2:56 a.m. and 2:59 a.m. on May 23, 2020, officers in the detention center's intake area searched Plaintiff, who remained upright, handcuffed, and fully clothed throughout the encounter. (See Video 1 at 2:56:53 AM to 2:59:08 AM; Video 5 at 2:58:44 AM to 2:59:00 AM.)[4] Loud, boisterous, and seemingly intoxicated,

_____

4 The timestamp on the bodyworn camera footage, videos two through six (Docket Entry 11, ¶¶ 5-9), reflects "'Zulu' or Universal Time Coordinated, which is four hours ahead of eastern

Plaintiff issued multiple expletives, racial and homophobic slurs, and threats throughout his time in the intake area. (See Video 1 at 2:56:53 AM to 2:59:08 AM.) After removing the contents of Plaintiff's pockets, officers escorted Plaintiff through the detention center's hallway to an elevator. (See id. at 2:59:02 AM to 2:59:36 AM; Video 5 at 2:59:00 AM to 2:59:48 AM; Video 7 at 00:00 to 00:52.) Plaintiff continued his loud, expletive-laden, threatening, and racist commentary during this walk, with additional officers joining the escort on the way to the elevator. (See Video 1 at 2:59:02 AM to 2:59:36 AM; Video 5 at 2:59:00 AM to 2:59:48 AM; Video 7 at 00:00 to 00:52.)[5]

During the elevator ride, multiple officers restrained Plaintiff in the elevator's rear corner, holding him against the elevator's walls as he continued to threaten them, including threatening to sue. (See Video 5 at 2:59:48 AM to 3:00:27 AM; Video 7 at 00:52 to 01:34.) Plaintiff maintained his loud commentary as the officers escorted him off the elevator, through hallways, and into and across a cellblock, where they entered cell 8D04. (See Video 5 at 3:00:27 AM to 3:01:03 AM; Video 7 at 01:34

time" (id., ¶ 5).

5   Some of Plaintiff's statements suggest familiarity with certain of these officers. (See, e.g., Video 7 at 00:33 to 00:40 ("You see that boy back there behind you, he know who I am. What's up, Reese. These motherfuckers don't know who they're fucking with.").)

10

to 02:06.)[6]  In the interval between Plaintiff's arrival in the intake area and at the cell, another officer opened the cell and transferred the mattress from the cell's bed to its floor.  (See Video 2 at 3:00:26 AM to 3:01:05 AM.)

At officers' direction, Plaintiff knelt down on the mattress before officers shifted him into a prone position, face-down on the mattress.  (Id. at 3:01:05 AM to 3:01:14 AM; Video 5 at 3:01:03 AM to 3:01:13 AM; Video 7 at 02:06 to 02:18.)  Officers then stripped him of his clothing, during which process Plaintiff repeatedly and loudly exclaimed in pain, referencing his arm and repeatedly telling the officers to remove his handcuffs.  (Video 2 at 3:01:05 AM to 3:03:30 AM; Video 5 at 3:01:13 AM to 3:03:15 AM; Video 7 at 02:18 to 04:37.)  During this process, officers restrained Plaintiff's arms and hands behind his back, frequently holding his hands in such a position that it visibly restricted their bloodflow.  (See Video 5 at 3:01:10 AM to 3:03:15 AM; Video 6 at 3:01:08 AM to 3:03:30 AM.)  Officers removed Plaintiff's handcuffs (see Video 2 at 3:02:12 AM to 3:02:22 AM; Video 5 at 3:01:51 AM to 3:02:19 AM; Video 7 at 03:24), prior to removing Plaintiff's shirt and rolling his torso to the left and right to check under him on the mattress for contraband (see Video 5 at

---

6  In the videos of this incident, however, Plaintiff did not appear to actively resist officers' directives or actions.  (See, e.g., Video 1 at 2:56:53 AM to 2:59:36 AM; Video 7 at 00:00 to 05:32.)

Case 1:23-cv-00502-UA-LPA   Document 21   Filed 01/09/24   Page 11 of 29

3:02:19 AM to 3:03:10 AM; Video 7 at 03:24 to 04:14). Officers thereafter exited the cell, directing Plaintiff to remain lying down until he heard the cell door close. (See Video 7 at 04:14 to 04:37.) Plaintiff remained on the mattress throughout this process. (See Video 2 at 3:01:10 AM to 3:03:30 AM; Video 3 at 3:01:10 AM to 3:03:31 AM; Video 5 at 3:01:03 AM to 3:03:15 AM; Video 6 at 3:01:08 AM to 3:03:32 AM; Video 7 at 02:06 to 04:37.)

After officers closed and locked the cell door, a medical provider knocked on the cell door and, looking through the door's window, asked Plaintiff, "Do you have any injuries?" (See Video 7 04:50 to 04:59.)[7] After Plaintiff responded affirmatively, the medical provider repeatedly asked, "What are your injuries," to which Plaintiff responded, "I want to see a nurse," before ultimately saying, "my arm." (Video 7 at 04:59 to 05:15.) The medical provider, in turn, asked, "Any thoughts of harming yourself," to which Plaintiff again responded, "I want to see a nurse." (Id. at 05:15 to 5:19.) The medical provider subsequently turned away from the window and reported to the officer holding the video camera, "[Plaintiff] reports no thoughts of harming himself. He does report injury to his hand at this time, but no visible injuries seen. We'll continue to monitor. [Unintelligible.]"

---

7  An officer also reported to the handheld camera, "zero three, three five, inmate [Plaintiff] brought from intake. Direct deposit. Force was used [unintelligible] 8D04." (Video 7 at 04:37 to 04:52.)

Case 1:23-cv-00502-UA-LPA   Document 21   Filed 01/09/24   Page 12 of 29

(<u>Id.</u> at 05:20 to 05:32.)  As she did so, Plaintiff continued to loudly exclaim and say he wanted to see a nurse.  (<u>Id.</u>)

**DISCUSSION**

**I. Dismissal Motion**

**A. Relevant Standards**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff."  <u>Coleman v. Maryland Ct. of App.</u>, 626 F.3d 187, 189 (4th Cir. 2010), <u>aff'd sub nom.</u>, <u>Coleman v. Court of App. of Md.</u>, 566 U.S. 30 (2012).  The Court must also "draw all reasonable inferences in favor of the plaintiff."  <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted).  However, the Court "will not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  <u>United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.</u>, 707 F.3d 451, 455 (4th Cir. 2013) (internal quotation marks omitted).  The Court can also "put aside any naked assertions devoid of further factual enhancement."  <u>SD3, LLC v. Black & Decker (U.S.) Inc.</u>, 801 F.3d 412, 422 (4th Cir. 2015), <u>as amended on reh'g in part</u> (Oct. 29, 2015) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct.  Id.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal quotation marks omitted).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id.  In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" cannot "survive a Rule 12(b)(6) motion."  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).  "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Iqbal, 556 U.S. at 679).

14

Finally, in ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont, 637 F.3d at 448. The Court may also consider materials "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## B. Preliminary Matters

Defendants moved to dismiss all claims in the Complaint. (See Docket Entry 8 at 1-3.) In so doing, Defendants asserted that (i) "[t]he official-capacity claims against the Detention Officers are duplicative of the official-capacity claims against the Sheriff, and should be dismissed" (Docket Entry 9 at 7 (addressing "Claims 1-12, 21-22")); (ii) "Forsyth County should be dismissed" because, inter alia, "Plaintiff does not allege any acts or omissions by the County, or assert any claims against it" and "North Carolina's sheriffs, not counties, are responsible for jail and other law enforcement operations" (id. at 8); (iii) the Complaint's "conclusory allegations about supervision and discipline also fall short of plausibility and should be dismissed" (id. at 14); (iv) Plaintiff's eighth-amendment state-created danger claim fails because "the Eighth Amendment . . . does not apply to pretrial detainees" and, "[i]n any event, . . . Plaintiff does not allege harm caused by a private actor" (id.); (v) public official

15

immunity requires dismissal of "[t]he individual-capacity state law claims" (id. at 18; see id. at 16-18); (vi) Plaintiff's intentional infliction of emotional distress claim fails because, among other reasons, "Plaintiff does not identify any particular act that any particular person (allegedly) committed" (id. at 19; see also id. at 18); (vii) Plaintiff's negligence claims against "the Sheriff's Office" (id. at 19) fail, inter alia, due to the Complaint's lack of "allegations of a pattern of misconduct" (id. at 20); (viii) various negligence allegations involving the "Detention Officers' interactions with Plaintiff . . . . are devoid of any plausible support, such as the contention that the officers negligently 'failed to use less combative, provocative, and aggressive methods of communication with Plaintiff after his arrest'" (id.) and, regardless, "public official immunity bars the[]" negligence claims against Deputy Defendants (id.); (ix) any medical-related claim fails because, "as shown on the recordings, Plaintiff was evaluated by a nurse immediately" and, "[t]o the extent Plaintiff meant to assert that the jail's medical staff did not provide appropriate care, he has not plead a plausible medical malpractice claim under applicable law" (id. at 21 (emphasis omitted)); (x) Plaintiff's injury to prisoner claim fails because the relevant statute "does not create a free-standing cause of action that could survive dismissal" of Plaintiff's negligence claims and the disputed incident does not satisfy the standard for

16

the statute's application (id. at 22); (xi) Plaintiff's battery claim fails because, inter alia, "[d]etention officers have a right to touch a detainee" (id.) and, "[a]s a result of the group pleading, Plaintiff has not plausibly alleged that any particular Defendant offensively touched Plaintiff" (id. at 23); (xii) Plaintiff's individual-capacity "Section 1983 claims against Sheriff Kimbrough" fail because (A) the Complaint "does not allege he was directly involved," (id.), (B) "[t]o the extent Plaintiff asserts Section 1983 vicarious liability claims, that theory of recovery does not exist" (id.), and (C) any supervisory liability claims fail due to the isolated nature of the alleged incident and the lack of allegations "'that would provide the foundation for knowledge, actual or constructive, as to other instances of constitutional violations'" (id. at 24); and (xiii), given the Complaint's allegations, "[p]unitive damages are . . . unavailable as a matter of law" (id. at 25).

Plaintiff did not respond to these arguments. (See Docket Entry 16 at 1-8.) Instead, Plaintiff's Response contends only that (i) Plaintiff's negligence and Section 1983 claims against Deputy Defendants satisfy "the pleading requirements of Rule 8" (id. at 4); (ii) Plaintiff's "Complaint alleges facts necessary to overcome qualified immunity" (id. at 5); (iii) Plaintiff "sufficiently pled a claim based on failure to train" (id. at 7); and (iv) "Forsyth [County] has waived governmental immunity" (id. at 8). As courts

have repeatedly recognized, "a party who fails to address an issue has conceded the issue," Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08cv918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (collecting cases). See id. at *6-9; see also Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (explaining that "[a] party waives an argument by failing to present it in [his] opening brief or by failing to develop [his] argument — even if [his] brief takes a passing shot at the issue" (internal quotation marks omitted)). Accordingly, the Court should grant Defendants' request to dismiss all claims other than Plaintiff's Section 1983 excessive force claim against Deputy Defendants, Plaintiff's official-capacity negligence claim against Sheriff Kimbrough, and Plaintiff's failure to train claim. See Grayson, 856 F.3d at 316; Kinetic, 2010 WL 1667285, *6-9.

**C. Remaining Claims**

Plaintiff's remaining claims hinge on the Complaint's assertion that Deputy "Defendants used excessive force to remove Plaintiff's clothing and deposit Plaintiff into a cell" (Docket Entry 5, ¶ 22), by "violently throw[ing him] against the cell walls and the floor" (id., ¶ 23), causing him various injuries, including a broken jaw, wrist pain, and vision damage (id., ¶ 25).[8]

---

    8    Notably, the lawyer-drafted Complaint lacks any further factual development regarding the alleged excessive force, instead relying on conclusory assertions such as "[Deputy Defendant] failed to use reasonable force with Plaintiff when removing his clothes and depositing him in his cell" (Docket Entry 5, ¶ 60) and

Contending that "[t]he recordings of the intake process . . . plainly show that Plaintiff was not thrown against the cell walls or floor at all," Defendants maintain that "Plaintiff's [C]omplaint should be dismissed." (Docket Entry 9 at 2.) Defendants' position should prevail.

As discussed above, Plaintiff's Complaint explicitly relies upon the video recordings. (See Docket Entry 5, ¶ 22 ("The video of the encounter shows that Defendants used excessive force to remove Plaintiff's clothing and deposit Plaintiff into a cell.").) The parties all rely on the submitted videos in support of their positions on Defendants' Dismissal Motion (see, e.g., Docket Entry 9 at 2 (arguing that videos debunk allegations of excessive force); Docket Entry 16 at 4 ("From the[] facts" alleged "in paragraphs 20 through 25" of the Complaint "and the seven videos attached to Defendants' [Dismissal Motion], the Court can draw reasonable inference of negligence and violation of [Plaintiff's] Constitutional Rights necessary to support a violation of Section 1983.")), and Plaintiff does not dispute the authenticity of the videos (see Docket Entry 16 at 1-8). Because the videos qualify as "integral to the [C]omplaint and authentic," the Court may properly

_____

"Defendants failed to maintain appropriate use of force with detainee/arrestee" (id., ¶ 55). In evaluating a Rule 12(b)(6) motion, however, the Court disregards "naked assertions devoid of further factual enhancement," SD3, 801 F.3d at 422, and "legal conclusions couched as facts," Takeda Pharms., 707 F.3d at 455 (internal quotation marks omitted). Accordingly, those allegations cannot salvage the Complaint.

consider them in resolving the Dismissal Motion. Philips, 572 at 180; see also, e.g., Zsigray v. County Comm'n of Lewis Cnty., 709 F. App'x 178, 179 (4th Cir. 2018) (concluding that, where "[the plaintiff] stated several times in his complaint that a video recording of the incident supported his version of the facts . . . .[,] the district court's consideration of the video [in connection with Rule 12(b)(6) motion] was permissible," as "[t]he video, to which [the plaintiff] referred several times to authenticate his version of events, was integral to the complaint" and "the authenticity of the video was not in question").

The videos establish that Deputy Defendants did not throw Plaintiff against the cell wall or the cell floor. (See, e.g., Video 7 at 02:00 to 04:37.) Instead, after Plaintiff knelt down on a mattress on the cell floor, various officers shifted him into a prone position on the mattress, where he remained for the rest of the encounter. (See, e.g., id.) The videos further establish that a medical provider visually and verbally assessed Plaintiff as soon as the officers exited his cell. (See id. at 04:50 to 05:32.) Because the videos conclusively disprove the Complaint's factual allegations, the Court should grant the Dismissal Motion. See, e.g., Zsigray, 709 F. App'x at 179 (affirming dismissal of complaint where video disproved complaint's allegations); see also Scott v. Harris, 550 U.S. 372, 380-81 (2007) (explaining, in assessing summary judgment ruling where video evidence "blatantly

20

contradicted" party's allegations, that when a party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him," a court "should not . . . rel[y] on such visible fiction[, but should instead] view[] the facts in the light depicted by the videotape").

Plaintiff attempts to forestall this outcome by amending his allegations in his Response. (See Docket Entry 16 at 2-3, 6-7.) In particular, the Response (i) asserts that officers used improper force against Plaintiff in the elevator, (ii) criticizes their use of pressure point and pain-control techniques, and (iii) compares Plaintiff's encounter with officers to "several Forsyth deputies[']  . . . use of force against John Neville, which resulted in his death, due to positional and compressional asphyxia during a prone restraint" in December 2019 (id. at 7). (See id. at 2-3, 6-7.) This effort fails, however, because "[a plaintiff] is bound by the allegations contained in [hi]s complaint and cannot, through the use of motion briefs, amend the complaint," Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998). See, e.g., Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a

brief." (citations and internal quotation marks omitted)); see also Days v. U.S. Bank Nat'l Ass'n, No. 3:18cv440, 2019 WL 8619628, at *2 (W.D.N.C. June 4, 2019) ("In order to amend their complaint, [the p]laintiffs may not simply add allegations to their already existing complaint as they have done here. Rather, they must submit a proposed amended complaint that contains all claims they intend to bring in this action against all [the d]efendants they intend to sue. That is, [the p]laintiffs may not amend their complaint in piecemeal fashion." (emphasis omitted)). Accordingly, Plaintiff cannot stave off dismissal through the Response's new allegations.

The Court should thus grant Defendants' Rule 12(b)(6) request to dismiss the Complaint.[9]

## II. Sealing Motion

"[O]ut of an abundance of caution" (Docket Entry 12 at 7), Defendants also moved to seal the videos submitted in support of the Dismissal Motion. (See generally Docket Entry 12.) Plaintiff opposes such action, instead "request[ing] that the Court deny Defendants' [Sealing M]otion" (Docket Entry 15 at 5). (See id. at 1-5.)

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v.

---

9  In light of this outcome, the Court need not determine the extent to which, if any, the purchase of insurance waived governmental immunity for Sheriff Kimbrough and Forsyth County.

22

<u>Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597 (1978). "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." <u>Virginia Dep't of State Police v. Washington Post</u>, 386 F.3d 567, 575 (4th Cir. 2004). "[T]he common law presumption in favor of access attaches to all 'judicial records and documents,'" but "the First Amendment guarantee of access has been extended only to particular judicial records and documents." <u>Stone v. University of Md. Med. Sys. Corp.</u>, 855 F.2d 178, 180 (4th Cir. 1988) (quoting <u>Nixon</u>, 435 U.S. at 597).

"When presented with a request to seal judicial records," the Court begins by "determin[ing] the source of the right of access with respect to each document," as "only then can it accurately weigh the competing interests at stake." <u>Virginia Dep't of State Police</u>, 386 F.3d at 576 (internal quotation marks and brackets omitted). "Th[e common-law] presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." <u>Rushford v. New Yorker Mag., Inc.</u>, 846 F.2d 249, 253 (4th Cir. 1988). The relevant factors include "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." <u>In re Knight Publ'g</u>

23

Co., 743 F.2d 231, 235 (4th Cir. 1984).  Under the more stringent first-amendment standard, the Court may seal material "only on the basis of a compelling governmental interest, and only if the denial [of access] is narrowly tailored to serve that interest."  Stone, 855 F.2d at 180.

Under either standard, the Court must then evaluate the competing interests via the following approach.  First, "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request."  Virginia Dep't of State Police, 386 F.3d at 576.[10]  Next, "it must consider less drastic alternatives to sealing."  Id.  Finally, "if it decides to seal[,] it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing."  Id.  "Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review."  Id.  This approach also reflects the reality that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978), as well as that "the public's business is best done in

_____

10  The Sealing Motion has appeared on the public docket since July 2023.  (See Docket Entry 12.)  All interested persons thus have received "notice of the request to seal and a reasonable opportunity to challenge the request," Virginia Dep't of State Police, 386 F.3d at 576, yet the Docket reflects no objections to the Sealing Motion from any non-parties (see Docket Entries dated July 31, 2023, to present).

public," <u>Cochran v. Volvo Grp. N. Am., LLC</u>, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013).

Here, Defendants seek to seal exhibits in support of their Dismissal Motion, a dispositive motion. (<u>See</u> Docket Entry 12 at 1-3.) Accordingly, the more-rigorous first-amendment standard applies to their request. <u>See, e.g.</u>, <u>United States ex rel. Johnston v. Bank of Am., N.A.</u>, No. 1:21cv273, 2023 WL 5320094, at *3 (M.D.N.C. Aug. 18, 2023) ("Here, the Court applies the First Amendment standard as the motion to seal has been filed in connection with [a] motion to dismiss and relates to the [complaint]."), <u>report and recommendation adopted</u>, 2023 WL 6314318 (M.D.N.C. Sept. 28, 2023); <u>Kluttz v. North Carolina</u>, No. 1:20cv647, 2021 WL 4170429, at *3 (M.D.N.C. Sept. 14, 2021) ("Turning to the substance of the Sealing Motion, because the Court considered the Petition and Respondent's Proposed Exhibits in connection with its ruling on Respondent's Motion to Dismiss, the First Amendment confers the public's right of access to those documents."), <u>appeal dismissed</u>, No. 21-7361, 2022 WL 986678 (4th Cir. Mar. 31, 2022). Therefore, the Court may grant Defendants' request "only on the basis of a compelling governmental interest and only if the denial of access is narrowly tailored to serve that interest." <u>Robinson v. Bowser</u>, No. 1:12cv301, 2013 WL 3791770, at *3 (M.D.N.C. July 19, 2013) (internal quotation marks and brackets omitted); <u>see also Kluttz</u>, 2021 WL 4170429, at *3 (explaining that, where first-

25

amendment standard applies, party requesting sealing "must show that a 'compelling governmental interest' supports its Sealing Motion, and that its request 'is narrowly tailored to serve that interest'").

As grounds for their sealing request, Defendants argue that, "[i]n the normal course, North Carolina's General Statutes restrict Defendants' handling of the video recordings at issue here." (Docket Entry 12 at 5.) Defendants concede, however, that "[t]he Middle District has held that the strict procedural requirements of [the relevant state statute] do not apply to the handling of law enforcement recordings in, at least, the formal portions of federal litigation." (Id. at 6.) Defendants further assert that "[t]he Middle District has previously sealed [bodyworn camera footage] submitted with a dispositive motion. *See Smith*[ *v. City of Greensboro*, No. 1:19cv386], 2022 WL 18859223, at *3 [(M.D.N.C. Oct. 24, 2022)] (applying good cause standard)." (Docket Entry 12 at 8.) Notably, unlike here, in the case upon which Defendants rely for that proposition, the Court did not consider the relevant material in adjudicating any motions, let alone dispositive motions. See Smith, 2022 WL 18859223, at *3 ("Here, the good cause standard applies to each of the temporarily sealed documents at issue, because the Court has not taken up and ruled upon the motions to which they relate. Instead, the Court is denying those motions as moot, as the parties agreed in their settlement. In

26

other words, the Court is not using the temporarily sealed exhibits, or the temporarily sealed portions of pleadings, to determine the litigants' substantive rights, and the temporarily sealed filings have not played a relevant and useful role in the adjudicative process."). In contrast, this case mirrors situations where, as Defendants concede, the Court has refused to "seal[] law enforcement recordings" (Docket Entry 12 at 8 ("recogniz[ing] that the Court has also reached contrary decisions on the question of sealing law enforcement recordings submitted with summary judgment motions")). See, e.g., Anderson v. Winston-Salem Police Dep't, No. 1:20cv596, 2022 WL 3586022, at *16-17 (M.D.N.C. Aug. 22, 2022) (denying motion to seal bodyworn camera footage considered in evaluating summary judgment motion), report and recommendation adopted sub nom., Anderson v. Ferguson, No. 1:20cv596, 2022 WL 4237518 (M.D.N.C. Sept. 14, 2022).

Finally, Defendants maintain that "[t]he privacy interests associated with the nudity visible in the recordings, and a medical assessment, unless waived by Plaintiff, constitute a compelling governmental interest, particularly in conjunction with North Carolina's public policy interests as set out in the statute." (Docket Entry 12 at 7-8.)[11]  According to Plaintiff, however,

---

11 Defendants also identify as a "consideration for sealing" that, "[m]ore generally, the videos depict operations within the jail and the transport of Plaintiff through the facility. (Id. at 6.)  Defendants neither develop this point nor contend that this aspect of the videos, by itself, creates a compelling government

"[t]hese matters do not cause Plaintiff concern. Nor are they a valid basis for denying access to the footage in question." (Docket Entry 15 at 5.) Given Plaintiff's position, these interest do not warrant sealing the video footage. See Anderson, 2022 WL 3586022, at *17.

Under the circumstances, the Court will deny Defendants' request to seal the video footage. See id.

**CONCLUSION**

Plaintiff failed to oppose many of Defendants' dismissal arguments and the video footage conclusively disproves Plaintiff's remaining claims. In turn, Defendants failed to justify sealing the video footage.

**IT IS THEREFORE RECOMMENDED** that Defendants' Dismissal Motion (Docket Entry 8) be granted and Plaintiff's Complaint be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that the Sealing Motion (Docket Entry 12) is **DENIED**. The Clerk shall unseal videos one through seven,

---

interest. (See id. at 1-9.) Accordingly, they fail to justify sealing on this basis. See, e.g., Grayson, 856 F.3d at 316.

filed as exhibits to the Declaration of Joel Surratt.  (See Docket

Entry 13 at 1 (noting manual filing under temporary seal).)

This 9th day of January, 2024.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**
